## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT ALLEN SMITH,** | : | **CIVIL ACTION NO. 1:06-CV-2009** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DAUPHIN COUNTY ADULT** | : | |
| **PROBATION DEPARTMENT**, et al., | : | |
| | : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

This is a civil rights action filed by *pro se* plaintiff Robert Allen Smith ("Smith").  Presently before the court are the motions for summary judgment (Docs. 25, 28), filed by defendants Dauphin County Adult Probation and Parole ("DCAP"), Probation Officer Steven D. Merino, Jr. ("Probation Officer Merino"), Probation Officer James E. Vines ("Probation Officer Vines"), and Harrisburg City Police Officer Milo Hooper ("Officer Hooper").  For the reasons that follow, the motions (Docs. 25, 28) will be granted.

I.    **Statement of Facts**[1]

This case arises from a police incident that occurred on January 5, 2005 at the

home of Stephanie Davis ("Davis"), who was then on Dauphin County probation.

On the date in question, Probation Officers Merino and Vines went to Davis's

residence to investigate a report that Davis was in possession of stolen property,

including jewelry, cameras, electronic equipment, and firearms.  (Doc. 26 ¶¶ 17-19.)

Probation Officer Merino conducted a consensual search of Davis's residence and

located the stolen property.  (Id. ¶ 20.)  Davis advised Probation Officer Merino that

she had received the stolen property from a male individual named "Bob."  (Id.

¶ 21.)  Probation Officer Merino detained Davis and contacted the Harrisburg Police

Department to report the incident.  (Id. ¶ 22.)

Shortly thereafter, Smith arrived at Davis's residence to provide Davis with

an estimate for some repair work that he had been hired to complete.  (Doc. 13 ¶ 9;

Doc. 26 ¶ 31.)  When Smith arrived, he knocked on the door, which "swung open a

little bit."  (Doc. 26 ¶ 32.)  Smith then "yelled inside the home" for Davis, at which

point he was approached by Probation Officer Merino.  (Id. ¶¶ 15, 33-34; Doc. 13

---

[1]  In accordance with the standard of review for a motion for summary
judgment, the court will present the facts in the light most favorable to Smith, the
non-moving party.  See infra Part II.  The court notes, however, that Smith failed to
file a response to defendants' Joint Statement of Material Facts (Doc. 26).  By order
dated July 13, 2007 (Doc. 31), the court explicitly directed Smith to file such a
response.  The order expressly advised Smith that his failure to file a response
would "result in the facts set forth in defendants' statement of facts (Doc. 26) being
deemed admitted."  (Doc. 31); see also L.R. 56.1 (stating that the moving party's
statement of facts will be deemed "admitted unless controverted" by the opposing
party).

¶ 10.)  Probation Officer Merino identified himself, and Smith observed a badge around the officer's neck.  (Doc. 26 ¶¶ 35-36.)  Smith testified that Probation Officer Merino asked for his name and that he identified himself as "Smitty."[2]  (Doc. 27-2 at 8.)  At that point, Smith reached for his wallet, which was located in his right rear pants pocket.  (Doc. 26 ¶¶ 40-41.)  Smith claims that he intended to produce identification at Probation Officer Merino's request.  (Id. ¶ 42.)  However, Smith was asked not to reach for anything or to put his hands in his pockets.  (Id. ¶ 45(c).)

As Smith was reaching for his right rear pocket, Probation Officer Vines was descending the interior stairs of Davis's residence.  Probation Officer Vines yelled, "He's going for a gun," at which point Smith claims that both officers "rushed" and "tackled" him.  (Id. ¶¶ 43-45.)  It is undisputed that the officers were attempting to place handcuffs on Smith because they feared for their safety and that Smith's active resistance increased the amount of force necessary to achieve this result.  (Id. ¶¶ 45(e)-(f).)  After this scuffle ensued, Smith was placed in handcuffs.  (Id. ¶ 49.) Smith admits that the officers were attempting to secure him and check him for weapons, rather than hurt him.  (Id. ¶¶ 48(a), 48(c).)  Smith further admits that neither officer touched him until Probation Officer Vines made reference to a gun and that it was apparent to Smith that Probation Officer Vines actually believed he was reaching for a gun.  (Id. ¶¶ 46-47.)

---

[2]  Probation Officer Merino contends that Smith identified himself as "Bob." (Doc. 27-2 at 31.)

After Smith was handcuffed, the officers asked him to consent to a pat-down search for weapons, and he complied.  (Id. ¶ 50(a).)  During the search, the officers located a "razor type knife in Smith's right rear pocket."  (Id. ¶ 50(b).)  The officers did not search each of Smith's pockets.  In fact, Smith admits that he had a Swiss Army knife in one of his pants pockets, which the officers did not locate.  (Id. ¶¶ 50(c), 51.)  After the search, Smith was placed on a chair in Davis's dining room and was asked whether he "knew anything about stolen property."  Smith responded that he did not.  (Doc. 27-2 at 13; Doc. 26 ¶ 52.)  A handcuffed Davis was then escorted downstairs and placed in a chair next to Smith.  (Doc. 26 ¶¶ 53-54.)  Davis then informed Probation Officer Merino that Smith was the same "Bob" who had supplied her with stolen property.  (Id. ¶ 55.)  At that point, Probation Officer Merino contacted the Harrisburg Police Department and advised Smith that he was not free to leave.  (Id. ¶ 56.)

Approximately fifteen minutes later, Officer Hooper arrived.[3]  (Id. ¶ 57.) Officer Hooper spoke with Officers Merino and Vines, at which point he was advised that Davis was in possession of stolen property that she had allegedly received from Smith.  (Id. ¶¶ 58, 61-62.)  Officer Hooper then obtained Smith's identification and requested a background check of Smith.  (Doc. 13 ¶¶ 21-24; Doc. 19 ¶¶ 21-24.)  Thereafter, Officer Hooper conducted a search of Smith's person, during which he located a crack pipe and a pocket watch that was in Smith's left

---

[3]  Smith's claims against Probation Officers Merino and Vines are limited to those events that occurred *prior* to Officer Hooper's arrival.  (Doc. 26 ¶ 7.)

front jeans pocket and attached to his belt.  (Doc. 26 ¶¶ 64-67.)  Officer Hooper

subsequently took Smith into custody, at which point Smith's seized property was

also "released to Officer Hooper."  (Doc. 27-2 at 32.)  Ultimately, Officer Hooper filed

a criminal charge against Smith for possession of drug paraphernalia.  (Doc. 26

¶ 75.)  As the result of a plea agreement, Smith pled guilty to the lesser charge of

misdemeanor disorderly conduct.  (Id. ¶ 77.)  Smith filed an appeal in the Superior

Court of Pennsylvania, but his appeal was dismissed.  (Id. ¶¶ 78-79.)

On August 31, 2006, Smith commenced the above-captioned action in the

Dauphin County Court of Common Pleas.  (Doc. 1, Ex.)  On October 12, 2006,

defendants removed the case to this court.  (Doc. 1.)  On November 14, 2006, Smith

filed an amended complaint, alleging that defendants violated his rights pursuant to

the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments and committed torts

including kidnapping, robbery, assault with a deadly weapon, planting evidence,

and unlawful arrest.  (Doc. 13.)  Specifically, Smith alleges that Probation Officers

Merino and Vines unlawfully:  (1) arrested him, (2) handcuffed him, (3) placed a gun

to his head, and (4) held him against his will.  (Doc. 26 ¶ 6.)  Smith also alleges that

Officer Hooper refused to help him and, by so refusing, cooperated with Probation

Officers Merino and Vines in violating Smith's constitutional rights.  (Doc. 27-2 at

21.)

Defendants filed their respective motions for summary judgment on June 22,

2007.  (Docs. 25, 28.)  Smith failed to file briefs in opposition to these motions.  By

order of July 13, 2007 (Doc. 31), the court explicitly informed Smith that failure to

5

file briefs in opposition would result in the motions for summary judgment being deemed unopposed.  See L.R. 7.6 (providing that a party who fails to file a brief in opposition to a motion "shall be deemed not to oppose such motion").  Accordingly, the motions are deemed unopposed and are ripe for disposition.  See Blasi v. Attorney Gen., 30 F. Supp. 2d 481, 484 (M.D. Pa. 1998) ("[T]he district court may not grant a motion for summary judgment . . . solely because the motion is unopposed; such motions are subject to review for merit."); see also FED. R. CIV. P. 56(e) ("If the adverse party does not so respond, summary judgment, *if appropriate*, shall be entered against the adverse party." (emphasis added)).  The court will proceed with a review of the merits of defendants' motions.

## II.    **Standard of Review**

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  See FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see

also Fed. R. Civ. P. 56(c), (e).  Only if this threshold is met may the cause of action

proceed.  Pappas, 331 F. Supp. 2d at 315.

## III.  Discussion

Smith asserts § 1983 claims pursuant to the Fourth, Fifth, Sixth, Eighth, and

Fourteenth Amendments, as well as various state tort claims.  The court will

address these claims *seriatim*.[4]

### A.  Section 1983 Claims

Section 1983 of Title 42 of the United States Code offers private citizens a

means of redress for violations of federal law by state officials.  See 42 U.S.C. § 1983.

The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress . . . .

Id.; see also Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95

F.3d 1199, 1204 (3d Cir. 1996).  To establish a civil rights claim, the plaintiff must

show a "deprivation" of a constitutional or statutory right by a person "acting under

---

[4] In addressing Smith's claims, the court will construe Smith's allegations liberally because he is proceeding without the benefit of counsel.  See Haines v. Kerner, 404 U.S. 519, 521 (1972); see also Hartmann v. Carroll, No. 04-4550, 2007 WL 1967172, at n.8 (3d Cir. July 9, 2007).  However, in light of the standard of review governing motions for summary judgment, the court must disregard those allegations of Smith's complaint which are wholly unsupported by evidence of record.  See Pappas, 331 F. Supp. 2d at 315 (placing the burden on the non-moving party to proffer evidence of record in support of his or her claim for relief).

color of state law."[5]  Id. (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d

Cir. 1995)).

Satisfaction of these elements, however, does not guarantee recovery.

Certain officials, including police officers and other state actors performing

"discretionary functions," are shielded from suit if their conduct did not violate a

"clearly established statutory or constitutional right[] of which a reasonable person

would have known."  Wilson v. Layne, 526 U.S. 603, 609 (1999); Saucier v. Katz, 533

U.S. 194, 200-01 (2001).  This doctrine, known as "qualified immunity," provides not

only a defense to liability, but "immunity from suit."  Hunter v. Bryant, 502 U.S.

224, 227 (1991); Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  In Saucier, the

Supreme Court explained the analytical process for determining when to apply the

privilege of qualified immunity:

> A court required to rule upon the qualified immunity issue must
> consider . . . this threshold question:  Taken in the light most favorable
> to the party asserting the injury, do the facts alleged show the
> [defendant's] conduct violated a constitutional right?  This must be the
> initial inquiry . . . .  If no constitutional right would have been violated
> were the allegations established, there is no necessity for further
> inquiries concerning qualified immunity.  On the other hand, if a
> violation could be made out on a favorable view of the parties'
> submissions, the next, sequential step is to ask whether the right was
> clearly established.

Saucier, 533 U.S. at 201.  Thus, the qualified immunity analysis requires a two-step

inquiry, which considers first "whether the facts alleged show that the defendant's

---

[5] Defendants apparently do not dispute that, during the alleged incidents,
they were "acting under color of state law."

8

conduct violated a constitutional or statutory right" and second "whether the constitutional or statutory right allegedly violated by the defendant was clearly established." Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006); cf. Wright v. City of Phila., 409 F.3d 595 (3d Cir. 2005) (discussing whether the constitutional violation is a separate inquiry or part of the qualified immunity analysis); Kaucher v. County of Bucks, 455 F.3d 418, 423 n.2 (3d Cir. 2006).  Only if the court concludes that the defendant's conduct violated a clearly established right should it deny the defendant the privilege of qualified immunity.  Williams, 455 F.3d at 190.

When immunity is raised at the summary judgment stage, the court's analysis of the merits of the claims for purposes of summary judgment essentially merges with its analysis of the existence of a deprivation of federal rights for purposes of immunity.  See Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 838-41 (E.D. Pa. 2000); see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).").  Proceeding under the above framework, the court will consider each of Smith's § 1983 claims to determine, first, whether Smith has offered *prima facie* evidence of his claims and, second, whether defendants enjoy qualified immunity on those claims for which Smith has presented sufficient evidence.

1.    **Fourth Amendment**

Smith arguably asserts the following Fourth Amendment claims: excessive force, unlawful search and seizure, unlawful arrest, and malicious prosecution. The court will address each of these claims *seriatim*.

a.    **Excessive Force**

Every citizen has a Fourth Amendment right to be free from excessive force during investigatory seizures and lawful arrests. See Kopec v. Tate, 361 F.3d 772, 776-78 (3d Cir. 2004). To avoid running afoul of the Fourth Amendment, an officer may exercise only an objectively "reasonable" degree of force in effectuating a seizure or an arrest. Id.; see also Graham v. Connor, 490 U.S. 386, 388 (1989). Although the issue of reasonableness is generally a question of fact reserved for the jury, summary judgment may be entered if the court "resolves all factual disputes in favor of the plaintiff and concludes that the use of force was objectively reasonable under the circumstances." Gravely v. Speranza, No. 06-1592, 2007 WL 655290, at *2 (3d Cir. Mar. 5, 2007).

In determining whether an officer's conduct was objectively reasonable, a court must review all of the circumstances surrounding the seizure or arrest, including: (1) the severity of the crime, (2) the immediate threat that the suspect posed to the officer's safety, (3) whether the suspect was actively resisting or attempting to flee, (4) the number of suspects with whom the officers had to contend, and (5) whether the force applied by the officer caused physical injury to the suspect. Id.; see also Saucier, 533 U.S. at 205; Mellott v. Heemer, 161 F.3d 117,

123 (3d Cir. 1998). The court must evaluate these factors "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. The court's determination "must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation." Id. at 396-97. Accordingly, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers," should be deemed unreasonable under the Fourth Amendment. Graham, 490 U.S. at 396. Instead, the force used must rise above the *de minimis* level to give rise to a constitutional claim. Foster v. David, No. 04-4829, 2006 WL 2371976, at *7 (E.D. Pa. Aug. 11, 2006) (citing Ingraham v. Wright, 430 U.S. 651, 674 (1977)).

Even viewing the facts in the light most favorable to Smith, the court finds that the actions of Probation Officers Merino and Vines were objectively reasonable under the circumstances. The officers suspected Smith of participating in a serious crime, namely, supplying Davis with stolen property which included firearms. The officers also reasonably believed that Smith was reaching for a weapon and posed an immediate threat to their safety. See Estate of Smith v. Marasco, 430 F.3d 140, 150 (3d Cir. 2005) (stating that officer's belief that suspect was armed and had targeted officer with a laser-sighted weapon was a factor to be considered in reasonable force calculus). While Smith testified that he was directed by Probation Officer Merino to provide identification, there is no evidence of record to suggest

11

that Probation Officer Vines was aware of this request when he entered upon the scene and saw Smith reaching toward his back pocket. Probation Officer Vines reacted responsibly and in accordance with his training by yelling, "He's going for a gun." (See Doc. 26 ¶ 44.) Once Probation Officer Vines had called the presence of a weapon into question, it was objectively reasonable for both officers to attempt to subdue Smith. See United States v. Coker, 223 F. App'x 136, 141 (3d Cir. 2007) (stating that officer who saw suspect reach toward the floor of his car was justified in subduing the suspect and placing him in handcuffs); see also United States v. Hart, No. 97-21, 1997 WL 570922, at *4 (E.D. Pa. Sept. 4, 1997) (stating that officer was reasonably justified in believing that defendant who reached toward his waist was attempting to draw a weapon). Smith actively resisted the officers' attempts to subdue him, which increased the amount of force reasonably necessary to secure him and check him for weapons. Even given the additional force mandated by Smith's resistance, there is no evidence of record to suggest that the officers' actions were so extreme or egregious that they caused any physical injuries to Smith. See Garcia v. County of Bucks, Pa., 155 F. Supp. 2d 259, 264-65 (E.D. Pa. 2001) (dismissing claim of excessive force where force did not result in more than *de mimimis* injury); see also Sharrar v. Felsing, 128 F.3d 810, 821-22 (3d Cir. 1997) (stating that absence of physical injury to suspect is "relevant factor to be considered as part of the totality"). Because the combination of these factors warrants a finding that the degree of force used by Probation Officers Merino and

Vines was objectively reasonable, the court will grant the officers' motion with respect to Smith's claims of excessive force.

### b.     Unlawful Search and Seizure

Unlawful search and seizure claims require proof of an unconstitutional invasion of a plaintiff's "reasonable expectation of privacy" or a deprivation of his or her interest in property. See Soldal v. Cook County, 506 U.S. 56, 62-64 (1992); Rakas v. Illinois, 439 U.S. 128, 133-35 (1978) (citing Alderman v. United States, 394 U.S. 165, 174 (1969)). In the action *sub judice*, Smith alleges that Probation Officers Merino and Vines unlawfully seized him and that Officer Hooper failed to intervene to prevent this unlawful seizure. Smith also alleges that he was unlawfully searched by both Probation Officers Merino and Vines and Officer Hooper.

The court will turn first to the issue of unlawful seizure. An individual is seized when, in view of the totality of the circumstances, "a reasonable person would have believed that he was not free to leave." See Shuman v. Penn Manor Sch. Dist., 422 F.3d 141, 147 (3d Cir. 2005). To effect this type of seizure without running afoul of the Fourth Amendment, the police must possess "a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000); see also United States v. Delfin-Colina, 464 F.3d 392, 396 (3d Cir. 2006). Moreover, when a seizure is effected incident to the search of a premises, one or more of the following "law enforcement interests" may justify the seizure: (1) "the general interest in effective crime prevention and detection," (2) "the interest in preventing flight in the event that incriminating evidence is found,"

(3) "the interest in minimizing the risk of harm to the officers and the occupants of the area searched," and (4) "the interest in the orderly completion of the search." <u>Leveto v. Lapina</u>, 258 F.3d 156, 167 (3d Cir. 2001) (internal citations and quotations omitted).

In the instant case, Smith was seized when Probation Officers Merino and Vines forced him to the ground and handcuffed him. When they seized Smith, the officers reasonably believed that Smith was armed and reaching for a weapon. <u>See</u> <u>supra</u> Part III.A.1.a. Before the officers seized Smith, they discovered stolen property in Davis's home and learned that the stolen property had been supplied by a male individual named "Bob." Considering this in combination with Smith's suspicious movements and active resistance, the court finds that the officers possessed a reasonable suspicion that Smith was involved in supplying Davis with stolen property. Even absent this suspicion, the court finds that several legitimate law enforcement interests justified Smith's seizure, including the interest in preventing Smith's flight until the officers ascertained the extent of his involvement in the provision of stolen property, the risk of preventing harm to themselves and others, and the interest in conducting an orderly search of Davis's home. <u>See</u> <u>Leveto</u>, 258 F.3d at 167. Accordingly, the court finds that Smith's seizure was

justified and will grant the motion of Probation Officers Merino and Vines with respect to the claim of unlawful seizure.[6]

The court turns next to the issue of the search of Smith's person. "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, the officer may conduct a patdown search to determine whether the person is in fact carrying a weapon." Minnesota v. Dickerson, 508 U.S. 366, 373 (1993) (citing Terry v. Ohio, 392 U.S. 1, 24 (1968)). Such a search must be "strictly limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Dickerson, 508 U.S. at 373 (citing Terry, 392 U.S. at 26). Officers may also conduct a search of a person "incident to a lawful arrest." United States v. Robinson, 414 U.S. 218, 234-35 (1973). Such a search is broader in scope than a search incident to a seizure, permitting officers to search *both* for weapons and for evidence of crimes. Robinson, 414 U.S. at 244; see also Christopher v. Nestlerode, 373 F. Supp. 2d 503, 515 n.19 (M.D. Pa. 2005).

---

[6] Smith also contends that Officer Hooper should be held liable for his seizure under a failure to intervene theory. (See Doc. 13 ¶¶ 46-47.) "If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation . . . takes place in his presence, the officer is directly liable" under § 1983. Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002). In the instant case, Probation Officers Merino and Vines did not violate Smith's constitutional rights by seizing him. Therefore, Officer Hooper bore no duty to intervene to prevent Smith's seizure. Accordingly, Officer Hooper's motion for summary judgment will be granted with respect to Smith's claim of unlawful seizure.

In the instant case, Probation Officers Merino and Vines conducted a pat-down search of Smith incident to his seizure.  The officers were justified in their belief that Smith was armed and dangerous.  <u>See</u> <u>supra</u> Part III.A.1.a.  In addition, the officers' search was appropriately limited to a pat-down for weapons rather than a search of each of Smith's pockets.  (<u>See</u> Doc. 26 ¶¶ 50-51); <u>see also</u> <u>Terry</u>, 392 U.S. at 29-30 (approving similar pat-down search because it was "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs or other hidden instruments for the assault of the police officer").  Furthermore, even if the search had been too broad in scope, such constitutional error would have been cured by Smith's provision of consent to be searched.  (Doc. 26 ¶ 50(a)); <u>see also</u> <u>Florida v. Jimeno</u>, 500 U.S. 248, 251 (1991) (approving consensual searches "because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so").  Officer Hooper conducted a separate search of Smith once he arrived on the scene.  This search was conducted without consent but incident to Smith's lawful arrest.  <u>See</u> <u>infra</u> Part III.A.1.c.  While Officer Hooper's search of Smith was broader than that conducted by Probation Officers Merino and Vines, this increased breadth was justified by the need to insure that Smith did not possess any weapons or evidence of a crime before taking him into custody.  <u>See</u> <u>Robinson</u>, 414 U.S. at 244.  Accordingly, the court will grant defendants' motions for summary judgment with respect to all claims of unlawful search.

### c.   <u>Unlawful Arrest</u>

Claims of unlawful arrest require the plaintiff to show that he or she was arrested without probable cause.  <u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 634-35 (3d Cir. 1995); <u>see also</u> <u>Berg v. County of Allegheny</u>, 219 F.3d 261, 268-69 (3d Cir. 2000).  Probable cause to arrest requires "proof of facts and circumstances that would convince a reasonable, honest" officer that the person arrested has committed a crime.  <u>Lippay v. Christos</u>, 996 F.2d 1490, 1502 (3d Cir. 1993); <u>see</u> <u>United States v. Myers</u>, 308 F.3d 251, 255 (3d Cir. 2002).  Thus, the issue is not whether an individual actually committed the crimes for which he or she was arrested, but whether the police had probable cause to believe that the individual committed those crimes at the time of his or her arrest.  <u>Groman</u>, 47 F.3d at 634; <u>see also</u> <u>Baker v. McCollan</u>, 443 U.S. 137, 145 (1979) ("The Constitution does not guarantee that only the guilty will be arrested.  If it did, § 1983 would provide a cause of action for every defendant acquitted - indeed, for every suspect released.").

In the instant case, Smith was arrested by Probation Officers Merino and Vines when Davis informed them that Smith was the same "Bob" who had supplied her with stolen property.  (<u>See</u> Doc. 26 ¶ 56.)  To determine if Probation Officers Merino and Vines possessed probable cause to arrest Smith, the court must examine only that evidence that was available to the probation officers at the time of Smith's arrest.  At the time of Smith's arrest, the probation officers knew that: (1) Smith had exhibited suspicious behavior by reaching toward his rear pants pocket and resisting the officers' attempts to restrain him, (2) Smith had a knife in

the same pants pocket to which he had been reaching, (3) Smith was visiting the home of an individual who was in possession of stolen property, and (4) Smith had been identified by that individual as having been the supplier of the stolen property.  See Wilson v. Russo, 212 F.3d 781, 790 (3d Cir. 2000) (stating that "a positive identification by a victim witness" is typically sufficient to establish probable cause).  The court finds that a reasonable, honest officer armed with the foregoing information would have concluded that Smith had committed a theft crime and would have been justified in procuring his arrest.  Accordingly, the probation officers' motion for summary judgment with respect to this claim will be granted.[7]

### d.    **Malicious Prosecution**

A claim of malicious prosecution requires a plaintiff to prove that:  (1) the defendants initiated a criminal proceeding, (2) the criminal proceeding ended in plaintiff's favor, (3) the proceeding was initiated without probable cause, (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice, and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  Marasco, 318 F.3d at 521; see also Marable v. West Pottsgrove Twp., 176 F. App'x 275, 280-81 (3d Cir. 2006).  In

---

[7] Smith apparently contends that Officer Hooper should be held liable for his arrest under a failure to intervene theory.  (See Doc. 13 ¶¶ 46-47.)  Because Smith's arrest was lawful, Officer Hooper bore no duty to intervene.  See supra note 8. Accordingly, Officer Hooper's motion for summary judgment will be granted with respect to Smith's claim of unlawful arrest

the instant case, Smith has failed to establish the second element, to wit: that the

criminal proceeding ended in his favor. To the contrary, Smith pled guilty to

disorderly conduct. (Doc. 36 ¶ 77.) Although Smith subsequently appealed that

decision to the Superior Court of Pennsylvania, his appeal was dismissed. (Id.

¶¶ 78-79.) Because Smith is unable to establish that the criminal proceeding ended

in his favor, defendants' motions for summary judgment with respect to the

malicious prosecution claim will be granted.[8]

---

[8] Even assuming *arguendo* that Smith were able to establish the requisite
elements for a claim of malicious prosecution, Smith's claim would be barred by the
"favorable-termination rule" promulgated by the United States Supreme Court in
Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, the Supreme Court stated:

> [I]n order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness
> would render a conviction or sentence invalid, a § 1983 plaintiff must prove
> that the conviction or sentence has been reversed on direct appeal, expunged
> by executive order, declared invalid by a state tribunal authorized to make
> such determination, or called into question by a federal court's issuance of a
> writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that
> relationship to a conviction or sentence that has not been so invalidated is
> not cognizable under § 1983.

512 U.S. at 486-87 (1994); see also Hunt v. City of Scranton, Nos. 06-4381, 06-4975,
2007 WL 1624099, *2 -3 (3d Cir. June 6, 2007). If Smith's claim of malicious
prosecution were successful, it could invalidate his underlying criminal conviction.
Because Smith has proffered no evidence of record to suggest that his underlying
conviction has been overturned or successfully challenged, his claim of malicious
prosecution is Heck-barred.
    While defendants' argue that Smith's other Fourth Amendment claims are
similarly barred by Heck, this argument is unavailing. See Heck, 512 U.S. at 487 n.7
("[A] suit for damages attributable to an allegedly unreasonable search may lie even
if the challenged search produced evidence that was introduced in a state criminal
trial . . . [b]ecause of doctrines like independent source and inevitable discovery.");
Montgomery v. De Simone, 159 F.3d 120, 126 n.5 (3d Cir. 1998) ("Because a
conviction and sentence may be upheld even in the absence of probable cause for

2.    **Fifth Amendment**

The self-incrimination clause of the Fifth Amendment to the United States

Constitution provides that "[n]o person . . . shall be compelled in any criminal case

to be a witness against himself."  U.S. CONST. amend. V.  In <u>Miranda v. Arizona</u>, 384

U.S. 436 (1966), the United States Supreme Court implemented a prophylactic

measure designed to protect against violations of the self-incrimination clause.

Pursuant to <u>Miranda</u>, the government is required to advise an individual of his or

her rights before commencing a custodial interrogation.  <u>Id.</u> at 444.  However,

violations of <u>Miranda</u>'s prophylactic measures "do not amount to violations of the

Constitution itself."  <u>Giuffre v. Bissell</u>, 31 F.3d 1241, 1256 (3d Cir. 1994).  It is only

when a <u>Miranda</u> violation compels an individual to be a witness against himself in a

criminal prosecution that a constitutional violation occurs.  <u>Id.</u>  Accordingly,

conducting a custodial interrogation without <u>Miranda</u> warnings "is not a basis for a

§ 1983 claim as long as the plaintiff's statements are not used against her at trial."

<u>See</u> <u>Renda v. King</u>, 347 F.3d 550, 557-58 (3d Cir. 2003); <u>see also</u> <u>James v. York</u>

<u>County Police Dep't</u>, 160 F. App'x 126, 133 (3d Cir. 2005).  Moreover, there is no

free-standing Fifth Amendment right to counsel during an interrogation because

the right to counsel recognized in <u>Miranda</u> "is merely a procedural safeguard, and

---

the initial stop and arrest, . . . [plaintiff's claim] for false arrest . . . [is] not the type of
claim[] contemplated by the Court in <u>Heck</u> which necessarily implicate[s] the
validity of a conviction or sentence."); <u>Gravely</u>, 408 F. Supp. 2d at 189 ("A plaintiff
may claim that an officer used excessive force in effecting an otherwise lawful arrest
without running afoul of <u>Heck</u>.").

not a substantive right." <u>Giuffre</u>, 31 F.3d at 1256; <u>see also</u> <u>James</u>, 160 F. App'x at 133.

In the instant case, Smith arguably asserts a Fifth Amendment claim based the failure of all three officers to advise him of his rights pursuant to <u>Miranda</u> and to provide him with an attorney.  (<u>See</u> Doc. 27-2 at 14, 16.)  However, there is no evidence of record to suggest that these failures prompted Smith to make any statements that were subsequently used against him in a criminal prosecution.  <u>See</u> <u>Giuffre</u>, 31 F.3d at 1256.  Nor is there any evidence of record to suggest that the officers continued to interrogate Smith after he requested an attorney.  <u>See</u> <u>Davis v.</u> <u>United States</u>, 512 U.S. 452, 458 (1994) ("[I]f a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation.").  Because the officers' actions did not compel Smith to become a witness against himself, defendants' motions for summary judgment will be granted with respect to the Fifth Amendment self-incrimination and right to counsel claims.[9]

### 3.   <u>Sixth Amendment</u>

The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S.

---

[9]  To the extent that Smith attempts to assert a Fifth Amendment due process claim relative to the alleged withholding of his property, such a claim would fail for lack of federal action.  <u>See</u> <u>Nguyen v. United States Catholic Conference</u>, 719 F.2d 52, 54 (3d Cir. 1983)  (stating that the Fifth Amendment's due process clause limits "only federal government action"); <u>see also</u> <u>Garcia</u>, 155 F. Supp. 2d at 265 (E.D. Pa. 2001) ("The Fifth Amendment, of course, does not apply to state action.").

CONST. amend. VI.  However, this right to counsel does not attach until the initiation of formal judicial proceedings.  See James, 160 F. App'x at 131-32; see also Brewer v. Williams, 430 U.S. 387, 398 (1977).  In the instant case, Smith's right to counsel claim is based upon allegations that he was denied counsel during his interrogation but before he was formally charged.  Accordingly, defendants' motions for summary judgment will be granted with respect to the Sixth Amendment right to counsel claim.

### 4.   **Eighth Amendment**

The Eighth Amendment prohibition on cruel and unusual punishment prevents the use of excessive force against those *convicted* of crimes.  See James, 160 F. App'x at 131; see also Graham, 490 U.S. at 395 n.10.  In the instant case, Smith's allegations of excessive force are limited to the pre-arrest period. Accordingly, defendants' motions for summary judgment will be granted with respect to the Eighth Amendment cruel and unusual punishment claim.

### 5.   **Fourteenth Amendment**

Granting Smith's complaint the required liberal construction, the court finds that it alleges violations of Smith's procedural due process rights based on the officers' failure to return the property that was seized from Smith on the day of his

arrest.[10]  (See Doc. 27-2 at 19, 23.)   The evidence of record suggests that Probation

Officers Merino and Vines confiscated Smith's personal property and released that

property to Officer Hooper when Smith was taken into custody.  (Doc. 27-2 at 32.)

Pennsylvania has an established procedure for the return of property seized

during a police encounter.  Pennsylvania Rule of Criminal Procedure 324(a) states

as follows:

> A person aggrieved by a search and seizure, whether or not executed
> pursuant to a warrant, may move for the return of the property on the
> ground that he is entitled to lawful possession thereof.  Such motion shall be
> filed in the Court of Common Pleas for the judicial district in which the
> property was seized.

PA. R. CRIM. P. 324(a).  In the instant case, Smith does not allege that Pennsylvania's

procedure for the return of seized property is inadequate or unconstitutional.  See

Parker v. Wilson, 2000 WL 709484, at *6 (E.D. Pa. May 31, 2000) (granting summary

judgment on Fourteenth Amendment procedural due process claim for return of

seized property for failure to claim inadequacy of Pennsylvania procedure).

Accordingly, defendants' motions for summary judgment will be granted with

respect to Smith's Fourteenth Amendment claims.

---

[10]  The Fourteenth Amendment's "generalized notion of substantive due
process" does not apply where, as here, "a particular Amendment provides an
explicit textual source of constitutional protection against a particular sort of
government behavior."  County of Sacramento v. Lewis, 523 U.S. 833, 842 (1998).
An explicit source of protection is provided by the Fourth Amendment in the
instant case, so Smith's claim must fail to the extent that is premised upon
generalized notions of substantive due process.  See James, 160 F. App'x at 132 n.3.

### 6.   **Municipal Liability**[11]

Smith also argues that the DCAP is liable under § 1983.  As an agency of
Dauphin County, DCAP's liability for Smith's claims must be assessed using the
specialized principles applicable to local government entities.  (Doc. 26 ¶¶ 8-11); see
also Brinton v. Del. County Adult Parole/Prob. Dep't, No. 88-3656, 1988 U.S. Dist.
LEXIS 10753, at *1 (E.D. Pa. Sept. 22, 1988) (analyzing § 1983 claims against local
probation and parole department pursuant to standard applicable to local
governments).  Local government entities may not be held liable under § 1983 for
the acts of their employees under a theory of *respondeat superior* or vicarious
liability.  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); see also
Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).  However, a local
government entity may be held liable if the plaintiff can identify an official policy or
custom that caused the plaintiff's injury."  Id. (citing Monell v. Dep't of Social
Servs., 436 U.S. 658, 694 (1978)*)*.  A local government entity may also be held liable
for a failure to train its employees if the failure to train "amounts to deliberate
indifference to the constitutional rights of persons with whom the police come in
contact."  Colburn, 946 F.2d at 1028 (citing City of Canton v. Harris, 489 U.S. 378,
388 (1989)).

---

[11]  Plaintiffs' municipal liability claim is otherwise known as a Monell claim
because the relevant doctrine was established by the United States Supreme
Court's decision in Monell v. Department of Social Services, 436 U.S. 658 (1978).

In the instant case, Smith admits that he has no evidence to establish that a DCAP policy, practice, or custom caused his injuries.  (Doc. 26 ¶ 74.)  Smith also admits that he has no evidence to establish that DCAP was on notice of and/or deliberately indifferent to a need for further training on the part of Probation Officers Merino and Vines.  (Id. ¶ 72.)  To the contrary, the evidence of record indicates that Probation Officers Merino and Vines are well-trained, having successfully completed the probation and parole academy, the Pennsylvania firearms academy, and forty additional hours of training related to their individual job responsibilities.  (Id. ¶¶ 73(a) - 73(c).)  Accordingly, defendants' motions for summary judgment will be granted with respect to his § 1983 claims against DCAP.

**B.**     **State Law Claims**[12]

The only remaining claims are tort claims pursuant to state law.  However, the parties have not articulated specific reasons for the court to entertain these claims in the absence of a federal cause of action, and the court declines to do so. See 28 U.S.C. § 1367(c) ("The district court[] may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995) ("[W]here the claim over which the district

_____

[12]  Having found that Smith has failed to offered *prima facie* evidence of any constitutional rights violations, the court need not address the subsequent issue of whether Smith's rights were clearly established before moving on to an analysis of his tort claims pursuant to state law.  See supra Part III.A (discussing qualified immunity defense).

court has original jurisdiction is dismissed before trial, the district court *must*

decline to decide the pendent state claims unless considerations of judicial

economy, convenience, and fairness to the parties provide an affirmative

justification for doing so.") (emphasis added).

## IV.   <u>Conclusion</u>

For the foregoing reasons, the court will grant defendants' motions for

summary judgment (Docs. 25, 28).  An appropriate order will issue.


         <u>S/ Christopher C. Conner</u>
         CHRISTOPHER C. CONNER
         United States District Judge


Dated:        September 12, 2007

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT ALLEN SMITH,** | : | **CIVIL ACTION NO. 1:06-CV-2009** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DAUPHIN COUNTY ADULT** | : | |
| **PROBATION DEPARTMENT, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 12th day of September, 2007, upon consideration of

defendants' motions for summary judgment (Docs. 25, 28), and for the reasons set

forth in the accompanying memorandum, it is hereby ORDERED that:

1.      The motions for summary judgment (Docs. 25, 28) are GRANTED.

2.      The Clerk of Court is directed to enter JUDGMENT against plaintiff
        and in favor of defendants on all claims arising under federal law.

3.      The Clerk of Court is directed to CLOSE this case.


　 S/ Christopher C. Conner　
CHRISTOPHER C. CONNER
United States District Judge